## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BENJAMEN A. MILLER,

        Plaintiff,

        v.

VINCENT C. GRAY,

        Defendant.

Civil Action No. 13-2018 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Benjamen A. Miller, who is currently seventy-four years old, filed this action against the District of Columbia,[1] alleging that he was denied teaching positions with District of Columbia Public Schools ("DCPS") in three consecutive years in 2009, 2010 and 2011, in violation of the Age Discrimination in Employment Act ("ADEA") and District of Columbia Human Rights Act ("DCHRA").  Compl. ¶¶ 50–55, ECF No. 1.  The plaintiff seeks, *inter alia*, injunctive relief in the form of an order commanding the defendant to hire him "into the first position of employment he was unlawfully denied," damages and attorney's fees.  *Id.* at 11.  Pending before the Court is the defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 29, for which oral argument was heard on March 23, 2016, *see* Minute Entry (Mar. 23, 2016).  For the reasons set forth below, the defendant's motion is granted in part and denied in part.

---

[1] The plaintiff's complaint names Vincent Gray, former Mayor of the District of Columbia, as the defendant in this action.  Compl. ¶ 4.  The Court substituted the District of Columbia as the defendant based on the plaintiff's acknowledgement that Mr. Gray was being sued only in his official capacity.  *See Miller v. Gray*, 52 F. Supp. 3d 62, 66–67 (D.D.C. 2014).

## I.  BACKGROUND

The plaintiff began his long professional career as a social studies teacher, teaching for thirteen years in Virginia and the District of Columbia, from 1964 to 1977.  Pl.'s Opp'n Summ. J. ("Pl.'s Opp'n"), Ex. 3 ("Pl.'s Resume"), ECF No. 31-3.  He then spent the majority of his career, thirty-one years, as a federal government employee, serving for twenty-seven years in analyst positions at the U.S. Department of Education ("DOE").  *Id.*  In the last position he held at the DOE before retiring, which position the plaintiff held for sixteen years, from 1992 to 2008, the plaintiff served as a senior management analyst and the Chief of the Operations Planning and Evaluation Branch within the Office of the Assistant Secretary for Civil Rights, where he supervised and directed nationwide planning and evaluation activities for the enforcement of civil rights laws prohibiting age, gender, disability, race, and religious discrimination by recipients of federal education funds.  *Id.*  The plaintiff avers he is "superbly qualified to teach public school in the District of Columbia."  Compl. ¶ 1.  His qualifications include: (1) a B.A. degree in Sociology and two Masters degrees, one in Educational Administration and the other in Economics; (2) a District of Columbia Teaching License at the highest level issued in June 2009; (3) thirteen years of prior teaching experience in the District of Columbia from 1964 to 1977; and (4) a June 2009 certification, by the District of Columbia Office of the State Superintendent of Education, "to teach and/or provide services in . . . Social Studies/Grades 7–12 Level."  *Id.* ¶¶ 5–6, 8.

In his three-count complaint, the plaintiff alleges that DCPS discriminated against him based on his age when it rejected his applications for teaching positions for three separate school years:  the 2009–2010 school year, the 2010–2011 school year, and the 2011–2012 school year.  *Id.* ¶¶ 50–53.  He also claims that, in rejecting his applications for the 2010–2011 and 2011–2012

school years, DCPS was retaliating against him for filing complaints of discrimination following his rejections in the 2009–2010 and 2010–2011 school years. *Id.* ¶¶ 54–55. DCPS contends that, for each of the years at issue, it had "legitimate, non-discriminatory and non-retaliatory reasons" for not hiring the plaintiff, Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") at 7, ECF No. 29, but the plaintiff counters that these reasons were "false" and, thus, pretext for unlawful discrimination and retaliation, Pl.'s Opp'n at 17, ECF No. 31. The factual background with respect to the plaintiff's claims for each school year are summarized below.

### A.     2009–2010 School Year

On July 14, 2009, the plaintiff applied for a social studies teacher position for the 2009–2010 school year. Def.'s SMF ¶ 5, ECF No. 29; Pl.'s Opp'n, Ex. 5 ("Pl.'s 2009 Application"), ECF No. 31-5. DCPS rejected his application on Thursday, July 23, 2009, in an email stating: "We have received a tremendous number of applications and the quality of applications was extremely high, making this a difficult selection year. After careful consideration, are unable to extend further consideration to your application." Pl.'s Opp'n, Ex. 7, ECF No. 31-7; *see* Def.'s Statement of Material Facts ("Def.'s SMF") ¶ 6, ECF No. 29. The evening of Sunday, July 26, 2009, the plaintiff emailed Morgan Gieseke, a DCPS Recruitment and Selection Program Assistant, "requesting a face-to-face debriefing to inform me of the specific reasons why my objective qualifications for a position as a social studies teacher or a school-based instructional coach did not rank me among the most highly qualified applicants." Def.'s Mot., Ex. C, ECF No. 29-3.

Early on the morning of July 27, 2009, Gieseke responded to the plaintiff's email. Def.'s Mot., Ex. D ("July 27, 2009 Explanation Email"), ECF No. 29-4. She first explained to the plaintiff that DCPS had already "filled all available social studies vacancies for the upcoming

school year" and that "[b]y just applying now, you would most likely be eligible for vacancies that arise after the school year has started." *Id.* Gieseke "briefly listed the main reasons why [the plaintiff's] application was not moved to the next round of screening," identifying the following reasons for rejecting his application: (1) he did not have a Master's degree in education, teaching or curriculum, which made him ineligible for a teaching license; (2) he had not taken the required Praxis (teaching) tests; and (3) he did not have recent low-income urban teaching experience. *Id.*; *see also* Def.'s SMF ¶¶ 7–8, 10.

Upon receiving the email, the plaintiff telephoned Gieseke to explain that, contrary to reasons stated in her email, he had the credentials required for the position. Def.'s Mot., Ex. B, Pl.'s Resp. Def.'s First Disc. Req. ("Pl.'s Disc. Resp.") at 8–9, ECF No. 29-2; Def.'s SMF ¶ 9. The plaintiff also expressed concerns about being rejected because of his age, to which Gieseke allegedly reacted by saying that while "not ridding itself of all of its older teachers," DCPS was "seeking a greater balance of older and younger teachers." Pl.'s Opp'n, Ex. 1, Dep. of Benjamen Miller (Apr. 15, 2015) ("Pl.'s Dep.") at 76, 78, ECF No. 31-1; Pl.'s Disc. Resp. at 8–9. In any case, that same day, on July 27, 2009, after confirming the plaintiff's credentials, Gieseke invited the plaintiff to sit for a telephone interview, specifically asking him, "[w]hen are you free for a 20 minute phone interview?" Def.'s Mot., Ex. C; Def.'s SMF ¶ 11.

One week later, on August 3, 2009, the plaintiff spoke with Gieseke's supervisor, DCPS' Coordinator of Recruitment and Selection, Sarah So (also known as, "Sarah Twaddell"), who "reiterated" that all full-year positions had been filled, but that the plaintiff could interview for a potential mid-year position, to which end, So asked the plaintiff when he wanted to sit for an interview. Pl.'s Disc. Resp. at 9; Def.'s SMF ¶¶ 15, 17; Def.'s Mot., Ex. A ("Pl.'s Dep.") at 79, ECF No. 29-1. The plaintiff, concerned that he would not "be evaluated in a fair and objective

manner in an interview," requested "to have someone sit in on the interview" or to have information about the kinds of questions the interview would entail.  Pl.'s Dep. at 79–80.  When So declined both those requests, the plaintiff told her he would "talk to the EEO person and express my concerns" to gain assistance "in ensuring that the interview process will be . . . fair and objective."  *Id.* at 80; Def.'s SMF ¶ 16.  So told the plaintiff to be back in touch when he had decided what he wanted to do.  Pl.'s Dep. at 81; Def.'s SMF ¶ 17

The plaintiff did not email DCPS and request an interview until August 31, 2009, with an understanding, based on his conversations with the EEO office, that the telephone interview process for mid-year hires would begin in September 2009.  Pl.'s Opp'n, Ex. 11, ECF No. 31-11; Pl.'s Disc. Resp. at 9; Def.'s SMF ¶ 18.  The plaintiff filed a charge of age discrimination with the EEOC on October 13, 2009.  Def.'s SMF ¶ 24.  Shortly thereafter, on October 19, 2009, DCPS emailed the plaintiff to inform him that the selection process for mid-year teaching positions was being resumed and asked him to indicate whether he was still interested in a teaching position.  Def.'s SMF ¶ 20; Pl.'s Opp'n, Ex. 13 at 1, ECF No. 31-13.  The plaintiff timely replied to that email.  Pl.'s Opp'n, Ex. 13 at 2–3.  The plaintiff never received an interview, however.  Def.'s SMF ¶ 22; Pl.'s Dep. at 242.

### B.    2010–2011 School Year

On July 31, 2010, the plaintiff again applied for a social studies teaching position with DCPS, Def.'s SMF ¶ 25; Pl.'s Opp'n, Ex. 20 ("Pl.'s 2010 Application"), ECF No. 31-20, though he was aware that most positions were probably already filled by the time he submitted his application, *see* Def.'s SMF ¶ 27; Pl.'s Dep. at 150–52.  On August 12, 2010, the plaintiff received a rejection via an automated email, which explained that applications were no longer being screened due to a surplus of candidates.  Def.'s SMF ¶ 29; Def.'s Mot., Ex. F, Def.'s

Answers Pl.'s First Set Interrogs. ("Def.'s Interrog. Answers") ¶ 12, ECF No. 29-6.  His

application was nonetheless kept on file in the event positions opened up mid-school year, and it

was ultimately "screened out" on February 3, 2011.  Def.'s SMF ¶¶ 30–31; Def.'s Interrog.

Answers ¶ 12.

The plaintiff renewed his complaint about age-discrimination, prompting a February 28,

2011 letter from Traci Higgins, DCPS' Director of Labor and Management Relations, who

explained that he was rejected because "[t]he reviewer of [his] application determined that [his]

essays did not meet the rubric guidelines."  Def.'s SMF ¶ 32; Pl.'s Opp'n, Ex. 17 ("Def.'s

February 28, 2011 Explanation"), ECF No. 31-17.  The defendant asserts that the plaintiff's

essays were reviewed by Kerry Donahue, a short-term intern who did not have access to

plaintiff's prior EEOC complaint, Def.'s SMF ¶¶ 33–34; Def.'s Mot., Ex. G ("Def.'s EEOC

Position Statement"), ECF No. 29-7; Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply"), Ex. M,

Decl. of Kerry Donahue (Oct. 5, 2015) ("Donahue Decl."), ECF No. 34-3, but the plaintiff

disputes the veracity of this assertion, pointing to internal DCPS documents that show "Kathy

Choi" as the reviewer of the plaintiff's application and list Morgan Gieseke as a "Contact" in

connection with his application, *see* Pl.'s Statement of Genuine Issues ("Pl.'s SMF") at 4, ECF

No. 31-28; Pl.'s Opp'n, Ex. 18 ("Def.'s TeacherTrack Sheet I"), ECF No. 31-18; Pl.'s Opp'n,

Ex. 19 ("Def.'s TeacherTrack Sheet II"), ECF No. 31-19.  On July 8, 2011, the plaintiff filed a

second discrimination claim with the EEOC.  Def.'s SMF ¶ 36.

### C.    2011–2012 School Year

In April 2011, the plaintiff submitted applications for two DCPS positions:  Social

Studies Master Educator ("SSME") and Assistant Principal ("AP").  Def.'s SMF ¶ 37; Pl.'s Disc.

Resp. at 11.

### 1.   *SSME Application*

On May 17, 2011, DCPS emailed the plaintiff, explaining:

> We have received your [SSME] application and it is in our application system. Due to recent developments, we are not expecting any [SSME] positions for the 2011-2012 school year.  Therefore, we will not be moving forward with any [SSME] applications at this time.  If any vacancies for [SSMEs] arise, we will surely review your application and be in touch with you.

Pl.'s Mot., Ex. 22 at 1, ECF No. 31-22; *see also* Def.'s SMF ¶ 38.  In January 2012, DCPS initiated a new application process for a Humanities Master Educator position, which combined the subject areas of science, math, English and social studies.  *See* Pl.'s SMF at 4; Pl.'s Opp'n, Ex. 27, Dep. of Michelle Hudacsko (Jan. 15, 2015) ("Hudacsko Dep.") at 49–52, ECF No. 31-27; Def.'s Reply, Ex. Q, Hudacsko Dep. at 27, ECF No. 34-6.  The plaintiff contends that DPCS hired a younger candidate for this position, without considering his candidacy.  *See* Pl.'s SMF at 4.

### 2.   *AP Application*

On May 18, 2011, in response to an email from the plaintiff, DCPS confirmed that the plaintiff would "continue to be considered for the Assistant Principal pipeline."  Pl.'s Mot., Ex. 22 at 2.  Shortly thereafter, however, on June 9, 2011, DCPS emailed the plaintiff, explaining, "At this time, we are not expecting any additional assistant principal vacancies and will not be moving forward with assistant principal applications.  We will keep your application on file until 8/31/2011 and may review it on an as-needed basis if additional vacancies do arise."  Pl.'s Mot., Ex. 22 at 2; *see also* Def.'s SMF ¶ 46.  The defendant alleges that, by the time the plaintiff submitted his AP application, DCPS had already received a large number of applications and had thus stopped screening new applications.  Def.'s SMF ¶¶ 45, 49; Def.'s Reply, Ex. O, Dep. of Anna Hilary Darilek (Feb. 19, 2015) ("Darilek Dep.") at 59–60, ECF No. 34-4.  The plaintiff

points out, though, that several applicants who applied later than he had were hired as APs.  Pl.'s SMF at 4; Pl.'s Opp'n, Ex. 24 ("2011 AP Applications"), ECF No. 31-24.  The defendant claims that these applicants were "principal's choice" candidates, that is, candidates directly selected for hiring by a DCPS Principal, and that these candidates, unlike the plaintiff, were not required to go through the centralized application process.  *See* Def.'s SMF ¶¶ 50, 52–53; Def.'s Interrog. Answers ¶ 22 ("[I]f a principal identified an individual s/he wished to hire an as assistant principal, that candidate did not need to submit an application through the online system.  That candidate would be considered a 'principal's choice.'  DCPS valued principals' autonomy in making hiring decisions in their schools.").  The plaintiff challenges this claim, pointing to a page in the defendant's "Overview of Administrator Selection Process" document, produced in response to the plaintiff's request to "fully describe the selection process used to fill" "each [AP] position . . . for the 2011-2012 academic school year," Def.'s Interrog. Answers ¶ 22, which suggests that DCPS hiring policies for AP positions for the 2011–2012 school year prohibited non-centralized hires, *see* Pl.'s SMF at 4–5; Pl.'s Opp'n, Ex. 26 ("Def.'s 2011–2012 AP Policy Slide"), ECF No. 31-26.

The plaintiff filed a third charge of age discrimination with the EEOC on April 30, 2012, and on September 30, 2013, the EEOC closed its investigation of the plaintiff's three complaints and issued a notice of the right to sue.  Def.'s SMF ¶¶ 54–55.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden to demonstrate the "absence of a genuine issue of material fact" in dispute, *id.* at 323, while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Anderson v. Liberty Lobby, Inc.* ("*Liberty Lobby*"), 477 U.S. 242, 248 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, appropriate inquiry is "whether, on the evidence so viewed, 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Liberty Lobby*, 477 U.S. at 248)); *see also Greer v. Paulson,* 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("[S]heer hearsay . . . counts for nothing on summary judgment." (internal quotation marks omitted)); FED. R. CIV. P. 56(c), (e)(2)–(3).

"Evaluating whether evidence offered at summary judgment is sufficient to send a case to the jury," is "as much art as science." *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011). This evaluation is guided by the related principles that "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), and "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 1863 (quoting *Liberty Lobby,* 477 U.S. at 255). Courts must avoid making "credibility determinations or weigh[ing] the evidence," since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150-51 (2000); *see also Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 295–96 (D.C. Cir. 2015). In addition, for a factual dispute to be "genuine,"

the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," *Liberty Lobby*, 477 U.S. at 252, and cannot rely on "mere allegations" or conclusory statements, *see Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011); *Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *accord* FED. R. CIV. P. 56(e).  If "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record." FED. R. CIV. P. 56(c)(3).

## III.    DISCUSSION

Where, as here, a plaintiff's ADEA and DCHRA claims are not supported by direct evidence of discrimination or retaliation, the Court employs the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), *see Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015) (applying the *McDonnell Douglas* framework to discrimination claims); *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to claims of unlawful retaliation), which framework applies to ADEA claims, *Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006), as well as to claims brought under the DCHRA, *see Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011) ("We analyze discrimination claims under the D.C. Human Rights Act in the same way that we analyze discrimination claims under the federal anti-discrimination laws.").

Under the *McDonnell Douglas* framework, "the plaintiff bears the initial burden of demonstrating a prima facie case of discrimination" or retaliation.  *Giles*, 794 F.3d at 6 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)).  "The burden then shifts to the employer to set forth a legitimate, non-discriminatory [or non-retaliatory] reason for the challenged action."  *Id.* (alteration in original).  At the summary judgment stage, however, "once the employer asserts a legitimate, non-discriminatory [or non-retaliatory] reason for its challenged action, the question whether the employee actually made out a prima facie case is 'no longer relevant' and thus 'disappears' and 'drops out of the picture.'"  *Id.* (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008)).  Such is the case here, where the defendant has proffered non-discriminatory and non-retaliatory reasons for not hiring the plaintiff for each school year.  *See* Def.'s Mem. at 7–15.

Thus, the question at this stage is "whether the [plaintiff] has produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the [plaintiff] on the basis of . . . age."  *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Vatel*, 627 F.3d at 1246).  This question is to be considered "'in light of the total circumstances of the case,' asking 'whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer.'"  *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) (ellipsis in original) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289, 1291 (D.C. Cir. 1998) (en banc)).

A plaintiff may show pretext for discrimination in a number of ways, including showing that an employer treated persons of a different age "more favorably in the same factual circumstances;" "the employer is making up or lying about the underlying facts that formed the predicate for the employment decision;" "changes and inconsistencies in the stated reasons for the adverse action; the employer's failure to follow established procedures or criteria; the employer's general treatment of minority employees; or discriminatory statements by the decisionmaker." *Brady*, 520 F.3d at 495 & n.3. "Invidious motive may also be inferred from 'an error too obvious to be unintentional.'" *Allen*, 795 F.3d at 40 (quoting *Grosdidier v. Broad. Bd. of Governors,* 709 F.3d 19, 26 (D.C. Cir. 2013)). The Court addresses the defendant's proffered legitimate, non-discriminatory reasons and the plaintiff's evidence of pretext for each of the three school years *seriatim* below.

### A.     2009–2010 School Year Discrimination Claims

With respect to the 2009–2010 school year, the defendant maintains that the plaintiff was not hired because he did not sit for a telephone interview and therefore did not complete the application process. Def.'s Mem. at 7–9; *see* Rough Transcript of Hearing (Mar. 23, 2016) ("Rough Hrg. Tr.") at 3. The manner in which the defendant handled the plaintiff's job application with various explanations over the course of this litigation has, unfortunately for the defendant, undermined the legitimacy of this assertion such that a reasonable jury could find that the defendant's proffered reason is false and pretextual.

First, the defendant's underlying explanation for the plaintiff's alleged failure to complete an interview changed, at least partially, in the course of briefing the pending summary judgment motion. *Compare* Def.'s Mem. at 7–9, *with* Def.'s Reply at 1–3. Specifically, in its opening brief and statement of material facts, the defendant blames the plaintiff for allegedly failing to

respond to its October 19, 2009 email, Def.'s Mem. at 8; Def.'s SMF ¶¶ 20–21, which email asked the plaintiff to respond if he remained interested in a mid-year teaching position, Pl.'s Opp'n, Ex. 13 at 1.  The plaintiff, however, with his opposition brief, presents evidence showing that he did in fact reply to the October 19, 2009 email, confirming his continuing interest in a mid-year teaching position that school year.  Pl.'s Opp'n, Ex. 13 at 2–3.  The defendant, forced to concede that the plaintiff responded to the October 19, 2009 email, nonetheless continues to argue that the plaintiff was not hired because he did not participate in a telephone interview, averring that its decision to reject the plaintiff stemmed from his resistance "at nearly every turn" to DCPS' attempts to interview him when he was invited to interview on July 27, 2009.  Def.'s Reply at 2 & n.1.  The inconsistency in the defendant's explanation casts doubt on its legitimacy. *See Brady*, 520 F.3d at 495 n.3 (noting that changes and inconsistencies in an employer's stated reasons for the adverse action may be indicative of pretext for discrimination).[2]

Second, and more significantly, DCPS' initial explanation for rejecting the plaintiff— delineated in the email sent by Gieseke to the plaintiff on July 27, 2009—contained patently incorrect assertions regarding the plaintiff's qualifications, suggesting age bias on the part of DCPS.  The July 27, 2009 email stated, *inter alia*, that the plaintiff was (1) not qualified or eligible to receive a DC standard teaching license, and (2) did not have recent low-income urban teaching experience.  July 27, 2009 Explanation Email.  The plaintiff, however, already possessed a valid, current, standard DC teaching license, Pl.'s Opp'n, Ex. 4 ("Pl.'s DC Teaching License"), ECF No. 31-4, and DCPS hired four first-year social studies teachers with no teaching

---

[2]    At oral argument on the pending motion, counsel for the defendant argued that the stated reason for rejecting plaintiff's application for the 2009–2010 school year has been, at all times, the same:  the plaintiff was not hired because he did not sit for a telephone interview for the position for which he sought to be hired.  Rough Hrg. Tr. at 3.  The Court disagrees.  Stating that the plaintiff refused to be interviewed is not the same as stating that the plaintiff agreed to be interviewed but it was already too late.

experience whatsoever for the 2009–2010 school year, Pl.'s Opp'n, Ex. 9 (2009 applications of hired candidates), ECF No. 31-9, raising some doubt that the plaintiff's rejection was actually due to his purported lack of recent teaching experience.  Indeed, Gieseke's supervisor, Sarah So, ultimately admitted to the plaintiff that the initial rejection of his application "was improper," Pl.'s Dep. at 78–79, and both Gieseke and So invited the plaintiff to interview, despite the fact that he did not have recent urban teaching experience, *see* Def.'s SMF ¶¶ 11, 15, 17; Def.'s Mot., Ex. C; Pl.'s Disc. Resp. at 9.

While the defendant has fully acknowledged that a mistake was made in initially rejecting the plaintiff's application, *see, e.g.*, Def.'s SMF ¶ 11; Rough Hrg. Tr. at 3–4, conceding that the explanations provided to the plaintiff in the July 27, 2009 email for his non-hire were incorrect, it has failed to rebut other probative evidence of pretext presented by the plaintiff. Specifically, the plaintiff alleges that shortly after receiving Gieseke's July 27, 2009 email, he spoke with Gieseke on the phone and she expressed concern to him that his "teaching experience was some years ago" and told him that DCPS "wanted to get rid of some [old teachers] so that they could get a better balance of older and new teachers, younger teachers."  Pl.'s Dep. at 76. While not blatantly discriminatory, a reasonable jury could find these unrebutted allegations probative of discriminatory intent, and considered in combination with the other evidence in this case, the allegations could contribute to a reasonable jury finding that DCPS discriminated against the plaintiff based on his age.  *See Brady*, 520 F.3d at 495 n.3 (noting that "discriminatory statements by the decisionmaker" may establish pretext for discrimination).[3]

---

[3]    The defendant asserted at oral argument that the "plaintiff's self-serving statement" about that comment is insufficient evidence that the comment was ever made. *See* Rough Hrg. Tr. at 6–7. While, generally, a plaintiff's self-serving statement alone cannot create a genuine issue of material fact, *see Lawrence v. Lew*, No. 11-cv-1854 (KBJ), 2016 WL 154903, at *15 (D.D.C. Jan. 12, 2016) (citing *Liberty Lobby*, 477 U.S. at 248, and *Musgrove v. District of Columbia*, 775 F. Supp. 2d 158, 170 (D.D.C. 2011)); *Peterson v. AT & T Mobility Servs., LLC*, No. 14-439 (BAH), 2016 WL 5692822, at *5 (D.D.C. Sept. 28, 2015) (collecting cases), here, the plaintiff's allegation is documented in a contemporaneous "Pre-Complaint Questionnaire" he filed with DCPS' EEO on August 5, 2009,

Lastly, the defendant's assertion that the plaintiff agreed to be interviewed too late for him to be hired is somewhat belied by what occurred during the hiring process. The plaintiff does not deny that, by the time he spoke with Gieseke on July 27, 2009, DCPS was no longer hiring for full-year positions. Thus, the parties appear to agree that the plaintiff's resistance to interviewing affected, if anything, only his chances of obtaining a mid-year position. Notably, the plaintiff was told by the DCPS EEO office that the telephone process for mid-year hires would not begin until September 2009, Pl.'s Disc. Resp. at 9, and DCPS emailed the plaintiff on October 19, 2009, to inform him that the selection process for mid-year teaching positions was being resumed, Def.'s SMF ¶ 20; Pl.'s Opp'n, Ex. 13 at 1. Given that DCPS sent the October 19 email to assess continuing interest in mid-year positions *after* the plaintiff agreed to be interviewed on August 31, a reasonable jury could disbelieve the defendant's explanation that the plaintiff was not hired because he failed to make himself available for an interview immediately upon DCPS' request at the end of July or early August.

The defendant contends that the plaintiff has failed to produce any evidence that DCPS interviewed or hired anyone after August 31, 2009, when the plaintiff "at long last" indicated his willingness to participate in an interview. Def.'s Reply at 2–3. Indeed, the plaintiff's failure to produce any such evidence undermines his case. Nevertheless, evidence indicates that for the 2009–2010 school year, "[i]n general, applications were not reviewed unless there was a vacancy." Def.'s Interrog. Answers ¶ 4. Thus, drawing all justifiable inferences in the light most favorable to the plaintiff, as required at this stage of the proceedings, the Court must conclude that the plaintiff has put forth sufficient evidence of pretext for a reasonable jury to find in his favor.

Pl.'s Opp'n, Ex. 2, ECF No. 31-2, and the plaintiff does not rely on this comment alone to defeat summary judgment.

Accordingly, the defendant's motion must be denied with respect to the plaintiff's discrimination claims relating to the 2009–2010 school year.

### B.      2010–2011 School Year Discrimination and Retaliation Claims

With respect to the 2010–2011 school year, the defendant asserts two legitimate, non-discriminatory and non-retaliatory reasons for not hiring the plaintiff: (1) the plaintiff, who applied on July 31, 2010, submitted his application too late to be considered for a position prior to the beginning of the school year; and (2) the essays submitted as part of plaintiff's application did not meet the DCPS rubric guidelines. Def.'s Mem. at 10–12. For the following reasons, a reasonable jury could find that the defendant's proffered reasons for not hiring the plaintiff for the 2010–2011 school year are pretext for age discrimination.

First, the defendant's stated explanation for rejecting the plaintiff has again been inconsistent. While the evidence indicates that plaintiff did indeed apply later than all of the candidates who were hired for the 2010–2011 school year, Pl.' Opp'n, Ex. 14 (2010 applications of hired candidates), ECF No. 31-14,[4] in responding to the plaintiff's allegations of discrimination and retaliation before this litigation, the defendant failed *twice* to mention the lateness of his application as a reason for not hiring him, *see* Def.'s February 28, 2011 Explanation; Def.'s EEOC Position Statement. The sole reason for non-hire identified in the defendant's February 28, 2011 letter to the plaintiff and in its EEOC Position Statement was that the plaintiff's application essays "did not meet rubric guidelines." Def.'s February 28, 2011 Explanation; *see* Def.'s EEOC Position Statement. In other words, the defendant proffered lateness as an explanation for the first time in the course of this litigation, and belated

---

[4]      In an effort to downplay the tardiness of his application, the plaintiff argues that some of the hired candidates in 2010 applied "at roughly the same time" he did. Pl.'s Opp'n at 13 n.3. This is a mischaracterization of the facts. The evidence presented by the plaintiff shows that his application was filed at least ten days after the latest of all of the applications, by no means "at roughly the same time." *See generally* Pl.' Opp'n, Ex. 14.

explanations can support a finding of pretext.  *See Brady*, 520 F.3d at n.3 (noting that a plaintiff

may show pretext by pointing to "changes and inconsistencies in the stated reasons for the

adverse action").  In any event, the defendant's proffered reason about the tardiness of the

plaintiff's application would explain only why the plaintiff was not hired for a full-year position,

not the plaintiff's non-hire for a mid-year position.  Similarly to the 2009–2010 school year,

evidence indicates that the defendant screened candidates for mid-year positions well after the

start of the school year, in February 2011.  *See* Def.'s SMF ¶¶ 31–33.  While, again, the

plaintiff's case is considerably weakened by his failure to present concrete evidence showing that

DCPS hired anyone, even for a mid-year position, who applied after he did, a reasonable jury

may infer that DCPS hired candidates in or around February 2011 for mid-year positions based

on the fact that it did indeed review the plaintiff's application at that time.

Second, a reasonable jury could conclude that the defendant's explanation regarding the

plaintiff's essays is false.  The record indicates that applicants' essays were scored using rubric

guidelines evaluating several qualitative aspects of an applicant's writing.  *See* Def.'s Reply, Ex.

N ("DCPS Rubric Guidelines"), ECF No. 35.  The Court will not, despite the plaintiff's

invitation, evaluate the quality of his 2010–2011 essays under the rubric guidelines and compare

them with the essays of other applicants.  *See* Pl.'s Opp'n at 10–13.  The Court notes, however,

that one of the two essays in the plaintiff's 2010–2011 application appears to be exactly the same

essay that he submitted in his 2009–2010 application. *Compare* Pl.'s 2010 Application, *with* Pl.'s

2009 Application.  The defendant has offered no evidence that the rubric guidelines for the

2009–2010 school year were different from the rubric guidelines used in the 2010–2011 school

year, nor any evidence that would explain why the same exact essay would meet rubric

guidelines one year but not the next.

17

Instead, in response to the Court's questioning at oral argument, the defendant proffered that the plaintiff's 2009 essay was never reviewed by DCPS because, after it realized it "had been incorrect about his teaching qualifications," in order to correct the "mistake," DCPS "attempted to jump him to the next point in the process which would have been the phone interview." Rough Hrg. Tr. at 12. The jury may certainly draw such an inference, but the Court can find no evidence in the record, and the defendant cited to none, directly supporting that factual assertion. Evidence indicates that, for both the 2009–2010 and 2010–2011 school years, an applicant had to pass through a "screening" process to earn an interview. *See* Def.'s Interrog. Answers ¶¶ 4, 10. For the 2009–2010 school year, the plaintiff "officially advanced" through the screening process before being invited to schedule an interview. *Id.* ¶¶ 4, 6. For the 2010–2011 school year "[t]o be screened in (and thus earn an interview) an applicant needed a valid teaching license or the credentials to obtain a valid license and needed to have earned a score of three or better on the essay scoring rubric." *Id.* ¶ 10. A jury can reasonably infer from this evidence, and other evidence previously discussed with respect to the 2009–2010 school year, that the "screening process" for both school years was the same. Accordingly, the discrepancy in the defendant's treatment of the plaintiff's exact same essay in two consecutive school years could contribute to a reasonable jury's disbelief that the plaintiff's essays were the actual reason for his non-hire in the 2010–2011 school year.

Lastly, the defendant has acknowledged that Morgan Gieseke and Sarah So, the DCPS officials responsible for rejecting the plaintiff's 2009–2010 teaching application and whose actions the plaintiff challenged in a October 13, 2009 EEOC complaint, *see* Def.'s SMF ¶ 24, "were involved in screening applications for the Social Studies teach positions for the 2010-11 academic school year," Def.'s Interrog. Answers ¶ 7. Indeed, So testified that, from 2010 to

2012, she was a "coordinator" or "manager" working in "recruitment and selection" at DCPS and supervised Gieseke, who was a "program assistant." Pl.'s Opp'n, Ex. 6, Dep. of Sarah Twaddell (Mar. 31, 2015) ("So Dep.") at 14–15, ECF No. 31-6; *see also* Pl.'s Opp'n, Ex. 25, Darilek Dep. at 20–22, ECF No. 31-25 (explaining that Sarah So "focused . . . on teacher recruitment and selection" and "Morgan Gieseke worked for Sara" during the 2011–2012 application cycle). Additionally, So testified that she had access to all teacher applications, So Dep. at 96, and a printout from a DCPS database indicates that Gieseke communicated with the plaintiff via email on August 12, 2010, the day that the plaintiff received the rejection email for his 2010–2011 application, Def.'s TeacherTrack Sheet II. Finally, the parties do not dispute that both So and Gieseke were well aware of plaintiff's discrimination allegations relating to the 2009–2010 school year. *See* Pl.'s Opp'n, Ex. 10 (August 3, 2009 email from plaintiff to Gieseke and So discussing "concern regarding age discrimination against me in your earlier rejection of my application"), ECF No. 31-10.

The defendant avers that Kerry Donahue, a semester-long intern at DCPS, reviewed and rejected the plaintiff's application based "solely on her impressions of his application materials." Def.'s EEOC Position Statement. The defendant further claims that, "as a short-term intern for DCPS, Ms. Donahue had no access to [the plaintiff's] record of protected activity . . . [and] [i]nformation relating to [the plaintiff's] involvement in any protected activity was not indicated on [his] application . . . or any materials provided to the selection team during the screening stage." *Id.* While Donahue submitted a declaration attesting that she "currently do[es] not have a specific recollection of reviewing Benjamen Miller's essay responses," she nowhere in the declaration indicates whether she was aware of his former EEOC charge, how she was supervised during her internship or by whom she was supervised. *See* Donahue Decl. ¶ 3. In

fact, the defendant acknowledges that "Ms. So and Ms. Gieseke worked with interns to screen applications" for the 2010–2011 school year.  Def.'s Interrog. Answers ¶ 7.  Given the evidence of Sarah So and Morgan Gieseke's involvement in the teacher selection process at a supervisory level, a reasonable jury could find that the defendant's review of the plaintiff's 2010–2011 application was discriminatory or retaliatory.

Accordingly, the defendant is not entitled to summary judgment with respect to the plaintiff's discrimination and retaliation claims relating to the 2010–2011 school year.

### C.    2011–2012 School Year Discrimination and Retaliation Claims

#### 1.    *SSME Application*

The defendant asserts that the plaintiff was not hired as a SSME because there were no vacancies for SSME positions when he submitted his application in April 2011.  Def.'s Mem. at 13–14.  The plaintiff responds that, contrary to the defendant's assertion, a Humanities Master Educator position opened in the fall of 2011, and alleges that DCPS wrongfully failed to consider him for that position.  Pl.'s Opp'n at 16.  The plaintiff's argument is unsupported, and rebutted, by the record evidence.  The defendant's 30(b)(6) witness, Michelle Hudacsko, testified that (1) the Humanities Master Educator position was a different position than the SSME position because, although it included social studies, it also comprised other subject matters beyond the scope of social studies, such as math and science, Hudacsko Dep. at 27; (2) the Humanities Master Educator position was posted on the DCPS website as a separate position around December 2011, long after the plaintiff had applied for the SSME position, *id.* at 50–51, and candidates who had previously applied for other Master Educator positions were not considered for the position, *id.* at 51–52; (3) the Humanities Master Educator "vacancy was not driven by social studies" but, instead, it "was driven . . . by ECE initially because that's where [DCPS] . . .

had a resignation," *id*. at 50; and (4) DCPS considered only one internally recommended candidate and other "ECE candidates" for the position, *id*. at 52–53.  The plaintiff has produced no evidence that he is qualified or applied to supervise "ECE" instruction, nor any other evidence to dispute Hudacsko's testimony.  He merely asserts that the defendant "did not contact [him] to determine if he was interested in the position."  Pl.'s Opp'n at 16.  Therefore, his challenge to the defendant's proffered reason for its failure to hire him for an SSME position in the 2011–2012 school year is entirely unsupported, and the defendant's motion for summary judgment is granted with respect to these claims.

### 2.     *AP Application*

With respect to the AP position, the defendant asserts that the plaintiff applied late in the process and that the persons hired as APs who had applied later than the plaintiff were "principal's choice" candidates and did not need to go through the centralized application process.  Def.'s Mem. at 14–15.  The plaintiff counters that the reasons offered by the defendant are false because, for the 2011–2012 application cycle, the defendant effected a policy change that required all AP candidates to go through the centralized application process, Pl.'s Opp'n at 14–15, 17, pointing to a page in the defendant's "Overview of Administrator Selection Process" document, which the defendant produced in discovery in response to the plaintiff's request for the defendant to "fully describe the selection process used to fill" "each [AP] position . . . for the 2011-2012 academic school year," Def.'s Interrog. Answers ¶ 22; *see* Def.'s 2011–2012 AP Policy Slide.

The plaintiff's reliance on the alleged policy change is misplaced.  In addition to the fact that the defendant's 30(b)(6) witness, Anna Hilary Darilek, testified that the policy in question never went into effect, Darilek Dep. at 55, the policy, even if effective, would not rebut DCPS'

explanation that only "principal's choice" hires submitted applications later than the plaintiff. The policy provides that "[p]rincipals can only hire centrally-screened AP candidates."  Def.'s 2011–2012 Policy Slide.  While such a policy would require "principal's choice" candidates to go through the central screening process before they could be hired officially, it would not necessarily require that such candidates be screened along with, at the same time as, or at the same rate as other candidates who are not "principal's choice" candidates.

Moreover, even assuming the policy change in question was in place and, further, that this policy change somehow prohibited the hiring of "principal's choice" candidates, rendering the defendant's proffered explanations false, the plaintiff has still not produced any evidence that would allow a reasonable jury to find that the defendant discriminated or retaliated against him during the 2011–2012 hiring cycle.  *See Desmond v. Mukasey*, 530 F.3d 944, 963 (D.C. Cir. 2008) ("[T]here will be instances where the plaintiff has set forth sufficient evidence to reject the defendant's explanation, yet no rational factfinder could conclude that the action was discriminatory." (quoting *Reeves*, 530 U.S. at 148)).  The 2011–2012 AP hiring process was conducted by a different office than the office in charge of the 2009–2010 and 2010–2011 teacher applications, and there is no evidence that Sarah So or Morgan Gieseke were in any way involved in AP selection decisions.  *See* Darilek Dep. at 12–23.

Accordingly, the Court concludes that, with respect to the plaintiff's discrimination and retaliation claims relating to the 2011–2012 school year, the plaintiff has failed to produce sufficient evidence for a reasonable jury to find that the defendant's asserted reasons were pretext for age discrimination and retaliation, and the defendant's motion for summary judgment is granted with respect to those claims.

**IV.     CONCLUSION**

For the foregoing reasons, the defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.  Specifically, it is granted with respect to the plaintiff's discrimination and retaliation claims relating to his non-hire for a Social Studies Master Educator or Assistant Principal position in the 2011–2012 school year, and it is denied in all other respects.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 29, 2016

_____
BERYL A. HOWELL
Chief Judge